IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

EUGENE GADSON,

    Plaintiff,

v.                                           Civil Case No. 3:16-cv-882

UNITED STATES OF AMERICA,

    Defendant.

## OPINION

The plaintiff, Eugene Gadson, brought a negligence claim for medical malpractice under the Federal Tort Claims Act, 28 U.S.C. § 2671, after he underwent a reverse vasectomy at McGuire VA Medical Center. The Court previously dismissed the plaintiff's case after a bench trial and a further round of post-trial briefing. The Court concluded that Gadson failed to satisfy his burden of proof that his operating doctors violated the standard of care. Gadson now moves the Court to amend its prior judgment or grant a new trial based on new evidence discovered after trial and the Court's purported "erroneous conclusion" as to the facts presented at trial. (Pl.'s Br. at 1, Dk. No. 68.) For the reasons stated below, the Court denies the motion.

## I. BACKGROUND

The Court found the following facts after the conclusion of a two day bench trial on September 18 and 20, 2017, and a hearing on post-trial briefs held on November 2, 2017:

> Gadson had a reverse vasectomy at McGuire VA Medical Center on August 20, 2015. Drs. Adam Klausner and Shaoqing Zhou, both fellowship-trained microsurgeons, performed the surgery. During the surgery, the doctors used a standard-tip monopolar ("bovie") cauterization device at a setting of 30 on the skin and a micro needletip at a setting of 15 on and around the spermatic cord. Medical records indicate that the doctors set the electrocautery settings to a "range" of 30, but no evidence suggests that a range of 30 meant that the doctors

used the bovie at 30 the whole time. Further, undisputed testimony by Nurse Kathleen Childress revealed the practice of the doctors in a reverse vasectomy: they use a bovie at a setting of 30 on the skin but at a lower level when dissecting the vas deferens from the spermatic cord. The doctors did not use the bovie to cut tissue; they only used the device to coagulate tissue and stop bleeding.

For each testicle, the doctors dissected the spermatic cord to locate the two ends of the vas deferens that had been cut and clipped during Gadson's vasectomy. The doctors found that Gadson's vasectomy had occurred in an area called the convoluted vas deferens, a difficult area to see during a reversal procedure. The doctors removed the clips that had been placed on the ends of the vas deferens during the vasectomy. Next, the doctors used an operating microscope to reconnect the vas deferens (called an "anastomosis"). At some point during the procedure, the doctors experienced some kind of hiccup causing concern for blood flow to the testicle, but the doctors visually examined the testicles' color, consistency, and turgor to ensure blood flow just before closing the surgical openings and ending the procedure. The doctors closed the surgery about one hour after they dissected the vas deferens. The doctors did not use a Doppler ultrasound to check for blood flow.

Following the surgery, Gadson experienced significant pain and discomfort. The hospital records conflict with Gadson and his wife's recollection of the events. Hospital records indicate that Gadson had a pain level of zero out of ten upon discharge from the hospital the same day as the reverse vasectomy, but Gadson and his wife recall significant pain. In any event, the doctors had given Gadson strong pain medication for the surgery, perhaps accounting for a low pain level at discharge. The day after the surgery, a nurse from the hospital called Gadson, and he reported an eight out of ten pain level, but also said that he felt "fair." Gadson testified at trial that he actually told the nurse that he felt fair considering the fact that he was not dead, but the records do not indicate that response. The follow-up report also indicates that Gadson could eat, did not have nausea or vomiting, had continued swelling, and had no drainage. Gadson called the hospital on the second day after surgery complaining of pain, but the hospital records do not reflect this call and Gadson said that nobody instructed him to take any action based on his complaints. On the third day after surgery, Gadson called the hospital again, complaining of ten out of ten pain. A nurse told Gadson to go immediately to the nearest hospital. Gadson went to Henrico Doctors' Hospital, where Dr. David Rapp removed Gadson's left testicle after discovering that a lack of blood flow had left it nonviable.

(Op. 1-3, Dk. No. 65.) The Court also stated the following:

Moving to the cautery setting, Gadson claims that Drs. Klausner and Zhou violated the standard of care by using cautery at a setting of 30 throughout the surgery. This claim fails because the medical records indicate a "range" of 30, which undercuts the argument that the doctors must have used that setting the entire time. In fact, Nurse Childress believably testified that the doctors' standard practice involved reducing the cautery setting to 15 while operating on the

2

spermatic cord. Even if the doctors did use a setting of 30 the entire time, Dr. Costabile testified that this would not necessarily violate the standard of care. On these facts, Gadson fails to show by a preponderance of the evidence that the doctors used the bovie at a setting of 30 or that the standard of care requires a physician to use cautery at a level below 30.

(Op. 6.)

After trial, the plaintiff discovered new evidence within the McGuire VA electronic medical system that shows that at least some doctors do input an actual range into the medical records, rather than simply a maximum.

## II. DISCUSSION

Gadson first asks the Court either to alter its prior judgment or to grant a new trial based on new evidence under Federal Rules of Civil Procedure Rule 59. Specifically, Gadson claims that new evidence shows that the doctors used a bovie at the setting of 30 for his entire surgery. The Court finds that the new evidence does not affect the evidence presented at trial. Second, Gadson claims that the Court erred in concluding that a bovie at 30 falls within the standard of care, and that this error, combined with his idea that the doctors used 30 the entire time, warrants a new trial. The Court need not necessarily reach this second argument after having rejected the premise that Nurse Childress lied about the settings used, but the Court nonetheless rejects Gadson's assertion that the Court erred.

### A. The New Evidence Found After Trial

Gadson argues that new evidence warrants an amended judgment in his favor, or, at the very least, a new trial. The Court rejects both claims.

A motion to amend or alter judgment under Rule 59(e) is normally appropriate "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not

3

available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (citation omitted). To amend or alter judgment based on newly discovered evidence, a party must demonstrate that:

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

*Boryan v. U.S.*, 884 F.2d 767, 771 (4th Cir. 1989).

In addition to amending judgment in light of new evidence, a court should grant a new trial if "(1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Knussman v. Maryland*, 272 F.3d 625, 639 (4th Cir. 2001) (quoting *Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc.*, 99 F.3d 587, 594 (4th Cir. 1996)). A witness's perjury warrants a new trial when:

> (1) the trial court is "reasonably well satisfied" that a material witness gave false testimony; (2) in the absence of the false testimony, the jury may have reached a different conclusion; and (3) the party requesting the new trial was "taken by surprise" when the false testimony was given, and was unable to address it or was not aware of its falsity until after the trial.

*U.S. ex rel. Davis v. U.S. Training Ctr. Inc.*, 498 F. App'x 308, 321 (4th Cir. 2012).

A key dispute at trial centered on the bovie setting used by the defendants during Gadson's surgery. Gadson interprets Nurse Childress's trial testimony as affirmatively denying the ability to enter a bovie setting range into the medical records. She said that an input of 30 meant the highest setting used. Gadson says that the new evidence discovered after trial proves that the doctors and Nurse Childress could have entered a range of 15 through 30 into the records. He says that this ability shows that Nurse Childress lied about the capabilities of the

4

medical record system and shows that an input of 30 means that the defendants in fact used the bovie at 30 the entire time.

Unfortunately for Mr. Gadson, it is unclear whether Nurse Childress ever made a claim about the technical limitations of the hospital's electronic records template. The portions of Nurse Childress's testimony highlighted in Gadson's briefs show that she never directly said that she could not record a range. She merely said that the "[m]aximum is what we recorded" based on her training. At one point at trial Gadson's counsel asked her why she recorded the maximum setting: "That is because that is only, only have the room or ability to enter that number there?" (Trial Tr. 177:1-12, 172:11-21.) Nurse Childress answered "Yes" to the question, but the question lacks clarity, and the rest of her testimony still reveals that, based on her training, she would only enter the maximum number. *Id.* Gadson claims that this new evidence shows that Nurse Childress committed perjury on the stand and shows that, at the very least, the Court should not credit her testimony. Not so. While the newly produced medical record shows that the medical record system indeed has the ability to input a range of power levels, it fails to show that Nurse Childress actually used a range as a part of her normal practice and training. To be sure, a medical record showing that Nurse Childress herself had previously used a bovie range would have undercut her testimony. The new evidence, however, does not shake this Court's previous conclusion that Nurse Childress gave believable testimony based on her own practice and training.[1]

For a court to grant a Rule 59 motion to alter or amend judgment on the basis of newly discovered evidence, the evidence must be "such that [it] would require the judgment to be

---

[1] The Court previously stated that "no evidence suggests that a range of 30 meant that the doctors used the bovie at 30 the whole time." Although this new document provides some evidence that Nurse Childress *could* have used a range, she consistently testified that she did not do so as a part of her practice.

5

amended." *Boryan*, 884 F.2d at 771. To warrant a new trial based on perjury, the Court must be "'reasonably well satisfied' that a material witness gave false testimony." *U.S. ex rel. Davis*, 498 F. App'x at 321 (citation omitted). Gadson's newly discovered evidence fails to meet either standard. First, Gadson does not merit a new trial because Nurse Childress credibly testified before this Court, and the Court is not "reasonably well satisfied" that Nurse Childress gave false testimony based on the new evidence. Second, the Court still credits Nurse Childress's testimony, so the additional evidence does not require the Court to amend the judgment. Gadson does not merit an altered or amended judgment.

## B. Standard of Care

The Court previously determined that "[e]ven if the doctors did use a setting of 30 the entire time, Dr. Costabile testified that this would not necessarily violate the standard of care." (Op. 6.) Gadson asks the Court to reconsider that conclusion based on his assertion that Nurse Childress lied and the defendants actually used the bovie at a setting of 30 the entire time. The Court rejects Gadson's invitation because it is procedurally improper and because firm evidence supports the Court's prior conclusion.

First, a Rule 59 motion "may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted). Gadson could have and did argue this point at trial and at the hearing on the parties' post-trial briefs, and the Court rejected it. Second, the evidence supports the Court's finding. Dr. Costabile testified that using a bovie at 30 would not necessarily violate the standard of care when used well away from the spermatic cord and that when closer to the spermatic cord he likes to use 15 because it has always worked well for him. Dr. Costabile also specifically testified that using a different setting

does not automatically violate the standard of care (Trial Tr. 195:20-22) and that it depends on surgeon preference and where the surgeon uses the bovie on the patient (Trial Tr. 260:18–261:16). Reading his statement that it would not violate the standard of care to use a bovie of 30 away from the spermatic cord and his statement that it is his preference to switch to 15 later in the surgery, Dr. Costabile simply did not say that it would violate the standard of care to use a bovie at 30 near or on the spermatic cord.

### III. CONCLUSION

For the reasons stated above, the Court denies the motion to alter or amend judgment or for a new trial.

Let the Clerk send a copy of this Opinion to all counsel of record. An appropriate Order shall issue.

Date: June 8, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

7